UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

SASHA RHINO,

        Plaintiff,

    v.

FEDEX GROUND PACKAGE SYSTEM, INC.,

        Defendant.

------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-3704 (RPK) (RML)

RACHEL P. KOVNER, United States District Judge:

        Plaintiff Sasha Rhino took leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, from her job with defendant FedEx Ground Package System, Inc. ("FedEx") after suffering a knee injury. During plaintiff's medical leave, FedEx supervisors became "aware of a social media post showing video of plaintiff riding a scooter while touring Washington D.C." After questioning plaintiff about the video, FedEx terminated plaintiff's employment, citing "falsification of records or leave misconduct/abuse." Plaintiff then filed this lawsuit, alleging that FedEx violated the FMLA and New York Labor Law Section § 201-d(2)(c) by firing her. FedEx has moved to dismiss the complaint. Because all of Rhino's claims are either barred by the statute of limitations or insufficiently supported by the factual allegations in the complaint, FedEx's motion to dismiss is granted.

## BACKGROUND

        The following facts are taken from the complaint and assumed to be true for the purposes of this order.

1

From 2012 to April 2021, plaintiff Sasha Rhino worked as a pickup and delivery manager for defendant FedEx. Am. Compl. ¶ 2, 11 (Dkt. #16). In February 2021, while employed at FedEx, Rhino injured her knee in an off-the-job accident. *Id.* ¶ 18. Soon afterward, Rhino requested medical leave under the FMLA, claiming she was physically unable to perform many of her job duties. *Id.* ¶¶ 19–20. FedEx approved Rhino's request and granted her FMLA leave until April 19, 2021. *Id.* ¶ 21; *id.* at 12 (ECF pagination) (Ex. 1).

Three days before Rhino's FMLA leave was set to expire, FedEx supervisors became aware of a video posted to Instagram showing Rhino riding an electric scooter in Washington, D.C. *Id.* ¶ 23; *id.* at 16–19 (ECF pagination) (Ex. 3). That same day, a human resources employee called Rhino and "inquired about her return to work status." *Id.* at 17. Rhino "responded that she [was] not well" and "stated several times that she cannot straighten her leg." *Ibid.* When asked about her apparently straight leg while riding a scooter in the Instagram video, Rhino "denied that it was fully straight" and insisted "she was riding a scooter because she could not walk." *Id.* at 18.

Rhino's supervisors were unconvinced. They found that "Rhino's credibility [was] in question based on the fact that [her] knee look[ed] reasonably straight" in the video. *Id.* at 19. Indeed, at one point in the video Rhino "can be seen pushing off the curb." *Ibid.* Because Rhino's "explanation for [her] inability to work" was "inconsistent with the behavior observed in the video," FedEx concluded that she "violated the Acceptable Conduct Policy," specifically its provisions relating to the "integrity and falsification of company records." *Id.* at 18–19. As a result, FedEx terminated her employment. *Id.* at 19.

In April 2024, Rhino filed this lawsuit in New York Supreme Court, Queens County. Rhino's complaint asserts four claims. First, she alleges that FedEx unlawfully interfered with her rights under the FMLA. *Id.* ¶¶ 34–43. Second, she asserts that FedEx unlawfully retaliated against

her for exercising her rights under the FMLA. *Id.* ¶¶ 44–51. Third, she claims that FedEx discriminated against her on the basis of a disability, in violation of the New York City Human Rights Law ("NYCHRL"). *Id.* ¶¶ 52–59. Finally, she alleges that FedEx violated New York Labor Law ("NYLL") Section 201-d by firing her for engaging in a recreational activity. *Id.* ¶ 60–66.

FedEx removed the case to this Court, *see* Notice of Removal 1 (Dkt. #1), and now moves to dismiss for failure to state a claim, *see generally* Def.'s Br. in Supp. of Mot. to Dismiss ("Mot. to Dismiss") (Dkt. #17-1). FedEx argues that the FMLA claims are barred by the statute of limitations, that Rhino is not covered by the NYCHRL because she was not employed in New York City, and that all four claims fail because Rhino was fired not because of any protected activity but because she lied about her ability to work. *See* Mot. to Dismiss 1–2, 7–13.

After FedEx filed its motion to dismiss, Rhino voluntarily withdrew her NYCHRL claim with prejudice. *See* Opp'n to Mot. to Dismiss 3 (Dkt. #22). As a result, only the FMLA and NYLL claims remain.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facial "plausibility standard is not akin to a 'probability requirement,'" but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (quoting *Twombly*, 550 U.S. at 556). In contrast, a complaint fails to state a plausible claim when, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or when, as a matter of

3

fact, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Plaintiff's interference claim is time-barred, and plaintiff fails to plausibly allege that her firing was retaliatory or based on her engaging in a recreational activity. Accordingly, the motion to dismiss is granted.

I. **FMLA**

   A. **Interference Claim**

Plaintiff's claim of interference with FMLA rights is time-barred. An interference claim must be brought "not later than 2 years after the date of the last event constituting the alleged violation," or "within 3 years" if the violation was "willful." 29 U.S.C. § 2617(c)(1), (2). Rhino alleges that when FedEx fired her, it interfered with her FMLA right to take a full term of leave and her right to return to her position after that leave. Am. Compl. ¶ 41.

FedEx argues that Rhino's interference claim should be dismissed because it is duplicative of her retaliation claim. *See* Mot. to Dismiss 6–7. That is not the case. An interference claim requires a plaintiff to show "that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA," *Graziadio v. Culinary Institute of Am.*, 817 F.3d 415, 424 (2d Cir. 2016), whereas a retaliation claim requires a plaintiff to establish that her decision to take leave was a "motivating factor" in the defendant's decision to fire her, *Wood v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017). Rhino could therefore state an interference claim—but not a retaliation claim—if she were able to show that FedEx supervisors wrongfully terminated her FMLA leave for a non-retaliatory reason, such as a mistaken belief that she was no longer disabled. *See ibid.* (distinguishing between interference and retaliation claims).

4

Nevertheless, to the extent Rhino can state an interference claim independent of her retaliation claim, that claim is time-barred because Rhino's firing occurred more than two years before she filed her lawsuit, *see* Am. Compl. ¶ 2; Notice of Removal 1, and Rhino has not plausibly alleged willfulness on the part of FedEx.  To establish willfulness, Rhino must show that FedEx "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FMLA."  *Porter v. N.Y. Univ. Sch. of L.*, 392 F.3d 530, 531 (2d Cir. 2004) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

Rhino argues she adequately alleged FedEx's willfulness because "[a]t the motion to dismiss stage, a Plaintiff must make only a general allegation of willfulness."  Opp'n to Mot. to Dismiss 4–5 (Dkt. #22) (quoting *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 192 (S.D.N.Y. 2011)).  That is not true.  According to the Second Circuit, a plaintiff seeking to take advantage of an exception to a statute of limitations must "specifically plead facts" showing that her entitlement to the exception is "plausible."  *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (citation omitted).  Accordingly, when a plaintiff brings "her FMLA claim between two and three years after the alleged violation, . . . timeliness depends on whether she has plausibly alleged a 'willful' violation."  *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53 (2d Cir. 2017) (summary order); *see Murillo-Roman v. Pension Boards - United Church of Christ*, No. 1:22-CV-08365 (JLR), 2024 WL 246018, at *8 (S.D.N.Y. Jan. 23, 2024) ("A prospective plaintiff must plausibly allege a 'willful' violation to subject her claims to the [FMLA's] three-year statute of limitations."); *DeJesus v. Bon Secours Cmty. Hosp.*, No. 23-CV-806 (VB), 2024 WL 554271, at *3 n.3 (S.D.N.Y. Feb. 12, 2024) (stating that a "conclusory allegation" "is insufficient to plausibly plead a willful violation of the FMLA to which the three-year statute of limitations would apply").

5

Rhino alternatively argues that the complaint plausibly alleges willful interference because it states that FedEx "acted without the benefit of counsel" which, given its resources, "supports willfulness." Opp'n to Mot. to Dismiss 5. But the Supreme Court has rejected the argument that willfulness should "turn on whether the employer sought legal advice." *McLaughlin*, 486 U.S. at 134. After all, to act willfully an employer must either know its actions violate the FMLA or recklessly disregard that fact. *See Porter*, 392 F.3d at 531–32. Both knowledge and recklessness require that the employer acted with some subjective "awareness that their actions violated or could violate" the statute. *Whiteside*, 995 F.3d at 324. Acting without consulting counsel does not by itself suggest any awareness of wrongdoing—even when the employer's actions turn out to be mistaken—because of the possibility that the employer had a "completely good-faith but incorrect assumption" that its actions were lawful. *McLaughlin*, 486 U.S. at 135. As a result, Rhino's allegation that FedEx acted without obtaining legal advice is insufficient to plausibly establish willfulness.

In sum, to the extent that Rhino attempts to allege an interference claim distinct from her retaliation claim, that claim is time-barred because of a failure to plausibly allege that FedEx acted willfully.

### B. Retaliation

Rhino's claim for retaliation in violation of the FMLA—even if timely brought—fails on the merits, because Rhino has not plausibly alleged that her decision to take FMLA leave was a "motivating factor" in FedEx's decision to fire her. *Wood*, 864 F.3d at 166. To show that the FedEx supervisors were motivated by retaliatory animus, Rhino must plausibly allege that the supervisors lacked a legitimate, "non-retaliatory basis" for terminating her employment. *Alexander v. The Bd. of Educ. of City of New York*, 648 F. App'x 118, 120–21 (2d Cir. 2016).

6

Rhino cannot make this showing. The complaint itself suggests that FedEx terminated Rhino solely because company officials believed she misrepresented the extent of her knee injury. *See* Am. Compl. 17–19 (ECF pagination); *Alexander*, 648 F. App'x at 120–21 (affirming dismissal of FMLA retaliation claim when documents attached to complaint made clear that employer believed leave had been used fraudulently); *Worster v. Carlson Wagonlit Travel, Inc.*, 169 F. App'x 602, 603 (2d Cir. 2006) (affirming dismissal of FMLA retaliation claim where "[n]othing in the record indicated that [the employer] did not *believe* that [the employee] had intentionally deceived the company" and the "only reasonable inference" was that "[employer's] *perception* that it was being deceived . . . motivated the company's termination of [the employee]." (emphasis added)); *LeBoeuf v. N.Y. Univ. Med. Ctr.*, No. 98-CIV-0973 (JSM), 2000 WL 1863762, at *3 (S.D.N.Y. Dec. 20, 2000) ("Where an employee is terminated because the employer honestly believed that the employee was not using the leave period for its 'intended purpose,' an FMLA claim will not lie." (citation omitted)).

Start with the human resources records attached to Rhino's complaint. Those records show that FedEx asked about Rhino's health status only when it became aware of an Instagram video showing Rhino riding an electric scooter in Washington, D.C. Am. Compl. 16–19 (ECF pagination) (Ex. 3). When FedEx asked about her injury, Rhino said "several times" that she could not come to work because she could not "straighten her leg." *Id.* at 17. Yet FedEx officials concluded that her "knee looks reasonably straight" in the video and "she can be seen pushing off the curb." *Id.* at 19. Because "Rhino's explanation for [her] inability to work" was, in the company's view, "inconsistent with the behavior observed in the video," FedEx terminated Rhino for violating "the Acceptable Conduct Policy, relative to integrity and falsification of company

7

records." *Id.* at 18–19; *see Alexander*, 648 F. App'x at 120–21; *Worster*, 169 F. App'x at 603; *LeBoeuf*, 2000 WL 1863762, at *3.

Rhino's arguments that FedEx's retaliatory intent can be plausibly inferred despite its stated rationale fall short. Rhino first points to the close temporal proximity between her request for leave and her termination. *See* Opp'n to Mot. to Dismiss 7. But to raise an inference of retaliatory intent, there must be a "very close" connection between the request for leave and the termination. *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012) (citation omitted). Here, over two months elapsed between Rhino's leave request and her termination, *see* Am. Compl. ¶¶ 47, 49, and "months of separation between [the] protected activity and alleged retaliation cannot be considered very close." *Miller v. McHugh*, 814 F. Supp. 2d 299, 321 (S.D.N.Y. 2011); *see Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York*, 107 F. Supp. 3d 323, 329 (S.D.N.Y. 2015) ("[T]he passage of more than two months has been viewed as beyond the . . . 'retaliatory nexus'" (citation omitted)).

More critically, the timeline as a whole cuts *against* an inference of retaliatory intent. FedEx granted Rhino's leave request and allowed her to take that leave for over two months without issue. *See* Am. Compl. ¶¶ 20–24. There is no allegation in the complaint "that any adverse action was taken against her prior to the discovery" of evidence "that she had misused her FMLA leave." *Alexander*, 648 F. App'x at 121. According to the complaint, Rhino's supervisors began to consider termination "only after they determined that [she] misused her leave." *Ibid.*; *see* Am. Compl. ¶¶ 20–24; *id.* at 17–19 (ECF pagination) (Ex. 3). As the Second Circuit explained in *Alexander*, timing of this sort "makes it implausible that her termination was in retaliation for requesting or taking leave." *Alexander*, 648 F. App'x at 121. Instead, the timeline supports

FedEx's claim that it fired Rhino for misrepresenting her health status. *See* Am. Compl. ¶¶ 20–24; *id.* at 17–19 (ECF pagination) (Ex. 3).

Rhino similarly falls short in claiming that retaliatory intent can be plausibly inferred because FedEx fired her without exercising its statutory right to request a second medical opinion at its own expense, based on doubts about Rhino's initial medical certification. *See* 29 U.S.C. § 2613(c)(1). According to Rhino, the fact that FedEx terminated her without requesting a second opinion suggests that its concerns about misrepresentations were pretextual. *See* Opp'n to Mot. to Dismiss 7. But FedEx's decision not to pay to obtain an independent evaluation after reviewing the Instagram post is just as easily explained by non-retaliatory motives—such as a conclusion that a second opinion was unnecessary because the Instagram video conclusively contradicted Rhino's statements about her inability to work. Without more, the fact that FedEx opted against a second opinion cannot push Rhino's retaliation claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Worster v. Carlson Wagonlit Travel, Inc.*, No. 3:02-CV-167 (EBB), 2005 WL 1595596, at *2–3 (D. Conn. July 6, 2005), (concluding that "an employer who honestly believes that it is terminating an employee who obtained FMLA leave fraudulently will not be liable [for retaliation] even if the employer is mistaken" and even if "its investigation may have left something to be desired"), *aff'd*, 169 F. App'x 602 (2d Cir. 2006).

Rhino last argues that FedEx could not have honestly believed she misrepresented her inability to work because it knew she "was medically certified as disabled." Opp'n to Mot. to Dismiss 7. In support of her argument, the complaint references two certifications: one that was submitted to FedEx when Rhino applied for FMLA leave on February 14, 2021, and another dated April 21, 2021—the day Rhino was fired. *See* Am. Compl. ¶¶ 22, 47, 49; *id.* at 14 (ECF pagination) (Ex. 2). Neither creates the plausible inference that FedEx did not honestly believe its

9

non-retaliatory reason. The February 14th certification is dated more than two months before FedEx's discovery of the video apparently contradicting her claim that she remained unable to work. A certification at that early date is not particularly illuminating because of the obvious possibility that Rhino was disabled by an accident but later recovered.

The April 21 certification is similarly unhelpful for Rhino. For one, the complaint fails to allege that FedEx was ever made aware of this certification. *See id.* ¶ 22 (referencing the April 21 certification and stating only that "medical providers deem[ed] [Rhino] 100% disabled from work"). Given that the certification is dated the same day Rhino was terminated, it is unclear from the complaint whether the certification was even completed before Rhino was fired. Even assuming that Rhino sent the certification to FedEx before she was fired, the HR records attached to the complaint suggest that FedEx finalized Rhino's termination internally by April 17—four days before Rhino received the new certification. *See id.* at 16 (ECF pagination) (Ex. 3) (showing that an assessment approving Rhino's termination was last modified on April 17).

Because Rhino's complaint does not plead sufficient facts to demonstrate retaliatory intent, she cannot state a retaliation claim that is "plausible on its face." *Hudson Shore Assocs. Ltd. P'ship v. New York*, 139 F.4th 99, 106 (2d Cir. 2025) (quoting *Iqbal*, 556 U.S. at 678). Her FMLA retaliation claim is therefore dismissed for failure to state a claim.

## II.  NYLL

Rhino claims that FedEx terminated her in violation of NYLL Section 201-d(2)(c), which makes it unlawful for an employer to "discharge from employment or otherwise discriminate against an individual . . . because of . . . an individual's legal recreational activities." According to Rhino, the complaint shows that she was fired because of a protected recreational activity—namely, participating in a "sightseeing tour of Washington, DC using a motorized scooter." Opp'n to Mot. to Dismiss 9.

10

This claim fails because Rhino has not plausibly alleged that FedEx fired her for engaging in recreational activity. Under New York law, an employer does not violate Section 201-d(2)(c) when it fires an employee "not for the [recreational] activity" itself but for other information revealed by the recreational activity. *Sander v. Westchester Reform Temple*, 228 A.D.3d 688, 689 (N.Y. App. 2024). For example, when an employer fires an employee for posting offensive content to a blog or other website, multiple courts have held that even if "blogging is a protected recreational activity," the termination is lawful because the employee was fired "not for the activity of blogging, but for the content of the blog post." *Ibid.*; *see Espinoza v. CGJC Holdings LLC*, No. 23-CV-9133 (DLC), 2024 WL 3520662, at *7 (S.D.N.Y. July 23, 2024) ("Even assuming posting to Instagram is a 'recreational activity' under the NYLL, 'the complaint alleges that the plaintiff was discharged, not for the activity of posting to Instagram, but for the content of the post.'" (alterations adopted and citation omitted)). Similarly, in *Balchan v. New Rochelle School District*, No. 23-CV-06202, 2024 WL 2058726 (S.D.N.Y. May 7, 2024), the court held that an employer lawfully terminated an employee for taking personal leave because the termination was not for the act of taking leave itself, but for taking leave without approval. *Id.* at *10.

That reasoning applies here. As already explained, Rhino has failed to plausibly allege that FedEx terminated her for any reason other than the one set forth in the documents attached to her complaint—namely, that FedEx concluded an Instagram scooter video showed that Rhino misrepresented her inability to work. Because Rhino has not plausibly alleged that she was fired because she engaged in a recreational activity—as opposed to a fact that was revealed by her engaging in a recreational activity—her claim under Section 201-d(2)(c) is accordingly dismissed.

## CONCLUSION

For the foregoing reasons, FedEx's motion to dismiss is granted and plaintiff's complaint is dismissed. Leave to amend is denied because plaintiff "has not requested leave to amend" or "indicated what facts, if any, she could plead to survive dismissal if provided an opportunity to amend her complaint." *Mallett v. Town of Huntington*, No. 24-CV-5463 (KAM) (ST), 2025 WL 2630387, at *7 (E.D.N.Y. Sept. 12, 2025); *see Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("While leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' *see* Fed. R. Civ. P. 15(a), no court can be said to have erred in failing to grant a request that was not made."). The Clerk of Court is respectfully directed to enter judgment for FedEx and to close this case.

SO ORDERED.

      /s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: September 29, 2025
       Brooklyn, New York